## SELLAS v. KIRK.
### No. 13214.

United States Court of Appeals
Ninth Circuit.

Nov. 25, 1952.

Rehearing Denied Jan. 7, 1953.

Ernest S. Brown and Clel Georgetta, Reno, Nev., for appellant.

Wm. Amory Underhill, Asst. Atty. Gen., Miles N. Pike, U. S. Atty., Reno, Nev., Roger P. Marquis and John C. Harrington, Attys., Department of Justice, Washington, D. C., for appellee.

Before HEALY, BONE, and POPE, Circuit Judges.

HEALY, Circuit Judge.

Appellant sued to enjoin appellee, range manager of Nevada Grazing District No. 4, from effecting a reduction in the former's permitted grazing on the public lands within the District, and he asked also for declaratory relief. Appellee moved to dismiss for failure of the complaint to state a cause for relief, for lack of jurisdiction in the court over the subject matter, and on the ground that in any event the Secretary of the Interior is an indispensable party de-

fendant. In support of the motion appellee presented an affidavit of the regional chief of the Division of Range Management of the Interior Department and certain other exhibits including an opinion of the Secretary approving appellee's action. Appellant by affidavit supplied correspondence with the Department relating to the controversy. The cause being submitted on this showing, the court granted the motion and directed entry of a judgment of dismissal 101 F.Supp. 237.

The case concerns the administration of the Taylor Grazing Act, 43 U.S.C.A. § 315 et seq., as amended. In summary, this Act authorizes the Secretary of the Interior to establish grazing districts on the public lands, to make provision for the protection, administration, and improvement thereof, and to make such rules and regulations and establish such services as may be necessary to accomplish the purposes of the Act, namely, to preserve the land and its resources from destruction or unnecessary injury, and to provide for the orderly use, improvement, and development of the range. The Secretary is authorized to issue permits to graze livestock to such bona fide settlers, residents, and other stock owners as under his rules and regulations are entitled to participate in the use of the public range, preference to be given "to those within or near a district who are landowners engaged in the livestock business, bona fide occupants or settlers, or owners of water or water rights, as may be necessary to permit the proper use of lands, water or water rights owned, occupied, or leased by them, * * · *."

The facts appearing in the record are these: Nevada Grazing District No. 4 was established by the Secretary in 1936 pursuant to the Taylor Act. During the priority period (defined· in the regulations as the 5-year period immediately preceding June 28, 1934, the date of the enactment) appellant had grazed some 2,500 sheep and 200 cattle on the public domain in this area. After 1936 he was granted temporary year-to-year licenses to graze as many as 2,000 sheep and 75 cattle; and in 1943 a 10-year permit to graze that number of livestock was issued to him, this permit being subject. to termination in whole or in part at any time under specified circumstances. These privileges were granted during a period when an attempt was being made to work out a proper classification of base properties[1] and before commensurate property surveys for the District had been completed. The 1943 permit was canceled in August 1946 because of developments now to be related.

It is stated in the Secretary's opinion embodied in the record that the District in question is a "transitional area," namely, an area lying between one which requires a land base for livestock operations and one which requires a water base. The Federal Range Code, 43 CFR § 161.4, requires that base properties be classified as land or water. Because of the transitional character of the area it was not possible to establish· a satisfactory base for classification of the property in it under the existing regulation. Accordingly in 1944 the Advisory Board of the District (a body of local stockmen elected under authority of the Act by the users of the range) adopted a resolution recommending that, in the determination of the proper use of base properties of applicants and their relative dependence upon the range, owned or controlled dependent land and prior water be recognized as base property, but that total grazing privileges be based on at least a two-thirds land base and not to exceed a one-third water base. Pursuant to the recommendation of the Advisory Board, the Secretary in 1945 promulgated a special rule for the District, which we quote on the margin.[2] The Fed-

---

1. The term "base property" is defined in the Federal Range Code, 43 CFR § 161.2 (e), as "property used for the support of livestock for which a grazing privilege is sought and on the basis of which the extent of a license or permit is computed."

2. "A proper factual showing of its necessity having been made by the regional grazier and it having been found that local conditions in Nevada Grazing District No. 4 make necessary the application of a special rule for the classification of base properties in order better to achieve an

eral Range Code, 43 CFR 161.15 specifically authorizes the making of special rules suited to local conditions.

Following the adoption of the special rule all base properties in the District were adjudicated. As regards appellant, it was found that his land base had a demand on the range for 1,990 animal-unit months, and his waters were rated at 4,438 animal-unit months.[3] Applying the ratio of two-thirds land and one-third water, appellant's privileges were determined to be 2,985 animal-unit months in Class 1.[4] At the same time, all operators in the District were required to take a 10% cut in their Class 1 grazing privileges in order that the recognized demand be adjusted to the available range. The net result was that appellant's privileges were reduced to the equivalent of 1,000 sheep and 57 cattle, 87% on the Federal range.

Appellant took an administrative appeal from that adjudication, but later withdrew it. His existing permit having been canceled in consequence of the adjudication, he applied for a permit to graze 2,500 sheep and 200 cattle for the period from July 1, 1947 to June 30, 1948. The application was granted by the range manager to the extent of 1,000 sheep and 57 cattle, only. Appellant protested this action, and after a hearing before an examiner of the Bureau of Land Management, the director of the Bureau upheld the manager. Appellant then appealed to the Secretary of the Interior, who affirmed the manager's action. In deciding the matter the Secretary considered whether application of the two-thirds and one-third ratio was proper in

view of the special rule for the District adopted by the Secretary, and concluded that since the special rule did not prohibit the use of the ratio as proposed by the Advisory Board, its use must be regarded as within the discretion of the range manager. He observed that employment of the ratio affected all operators alike, hence appellant had no cause for complaint.

Appellant does not question the authority of the Secretary to promulgate special rules thought appropriate because of conditions obtaining in a particular district. Nor does he deny that all operators in this district who use both land and water as bases in their livestock operations are obliged to conform to the two-thirds: one-third ratio recommended by the Advisory Board, and later found unobjectionable by the Secretary. His contention—and apparently his sole point—is summed up in his reply brief in the following language: "Regardless of any rules suggesting a combination of lands and waters [as base properties], the Act prescribes that each must be given its full weight."

We have not been able to find any prescription of that character in the Act, either in terms or by implication. As was not unknown to the framers of this legislation, range conditions in the public land states vary widely. In some regions water for stockwatering purposes is so scarce that recourse must be had to artificial wells put down by the operators utilizing the range. In others there are living streams on the range lands, affording a relatively stable and plentiful water supply in all seasons. In areas of the latter type the prime

3. administration consistent with the purposes of the act, either land or water only, or a combination of land and water, may be classified as base property for a single livestock operation in that district. In instances in which a combination of land and water is so recognized, the following further classification will be made:
"Class 1. Land dependent by use and full-time prior water.
"Class 2. Land dependent by location and full-time water."
It will be observed that the rule does not specify the weight to be given the respective bases in such a combination.

3. The Federal Range Code, 43 CFR § 161.2(i), states that the term animal-unit month "as applied to lands that are base properties, means the amount of natural or cultivated feed necessary for the complete sustenance of one cow for a period of one month; as applied to Federal range, it means that amount of grazing privileges represented by the grazing of one cow for a period of one month. For the purpose of this definition, one cow will be considered the equivalent of one horse or five sheep or five goats."

4. In this District there was no range available for Class 2 privileges.

requisite for the development and proper utilization of the public range is privately owned or controlled land in the vicinity, upon which hay and other forage crops are produced in sufficient quantity to support the stock when not on the range. In such situations water may appropriately be assigned no weight in determining the proper relationship between the public range and private properties. Cf. 57 I.D. 213, 214; 58 I.D. 419, 421; 58 I.D. 686, 691.

Reference has already been made to the regulation, 43 CFR 161.4, under which base properties may be classified as either land *or* water. This regulation states that "land and water conditions and other factors affecting livestock operations in the area will be considered and determined according to customary use and best practices for good range management." Where in a particular area, conditions are such as to indicate the recognition of both land and water as a base, but it is thought that one factor outweighs the other in consequence, we would suppose it to be within the informed discretion of the grazing authorities to determine the relative weight to be assigned to each factor, there being no requirement of law that each is to be given its so-called "full weight" regardless of other considerations. In this view, the situation would seem to be one where "agency action is by law committed to agency discretion",[5] hence the action complained of here would not be subject to judicial review.

But assuming that the action on appellant's application for a permit is judicially reviewable, we think the Secretary of the Interior is an indispensable party to the suit. The only party defendant before the court is the Secretary's subordinate, and it is the Secretary, not the subordinate, who is authorized by the Act "to issue or cause to be issued permits to graze livestock" on grazing districts. 43 U.S.C.A. § 315b. The rule declared in the leading case of Williams v. Fanning, 332 U.S. 490, 493, 68 S.Ct. 188, 189, 92 L.Ed. 95, is that "the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him."

It appears moreover that the capacity of the range in the grazing district in question has been determined, and the range fully allocated to qualified users. If it should be held that appellant is entitled to graze a greater number of livestock than the number assigned him, the privileges of the other users must of necessity be reduced or readjusted accordingly. Thus in order to increase appellant's permitted use as he demands it would be necessary not only to put into effect a new special rule for the District, but to reclassify and readjudicate the base properties of all qualified users in the area. Manifestly the court ought not, at least without the presence of the Secretary, enter a decree of such far-reaching consequence both to the grazing service and to the users in the District.

The judgment of dismissal is affirmed.