STATE OF MISSOURI at the relation of FISHER BODY ST. LOUIS COMPANY, KANSAS CITY DIVISION, a Corporation, and ROYAL INDEMNITY COMPANY, a Corporation, Relators, v. HOPKINS B. SHAIN, EWING C. BLAND and WILLIAM E. KEMP, Judges of the Kansas City Court of Appeals.—137 S. W. (2d) 546.

Court en Banc, March 5, 1940.

*James E. Nugent, Douglas Stripp* and *Morrison, Nugent, Berger, Byers & Johns* for relators.

*Madden, Freeman & Madden* for respondents.

964

GANTT, J.—Relator seeks to have quashed the opinion of a Court of Appeals in Fitzgerald v. Fisher Body St. Louis Company et al., 130 S. W. (2d) 975. The material facts follow:

Action under the Workmen's Compensation Law. John C. Fitzgerald was a carpenter and as such became an employee of the Fisher Body St. Louis Company in January, 1929. At that time he was in good health and weighed one hundred seventy-five to one hundred eighty-five pounds. He so continued until the latter part of 1933, at which time he began to decline in health. He gradually grew worse, lost weight and collapsed while at work on May 29, 1934. Thereafter he did no work for the company and died March 11, 1936. The commission awarded compensation to plaintiff, the widow. The award was affirmed by the circuit court and by the Court of Appeals in the opinion under consideration.

The deceased worked forty or fifty feet from a booth where automobiles were sprayed with paint. The spraying caused a fog to pervade the carpenter shop. It was fine red dust which settled on the floor, stock piles and clothing and body of the deceased. He daily discharged the dust from his nose and mouth. In February, 1934, a chemical analysis of the paint disclosed that it contained fine particles of silica, iron oxide, aluminum oxide, calcium carbonate and basis lead carbonate. Each ingredient was insoluble in water and a mechanical irritant. There also was evidence tending to show that the death of Fitzgerald was caused by "tuberculosis induced by silicosis."

I. Relators contend that the opinion rules that "occupational disease," under compensation law, includes the aggrevation of latent tuberculosis and that said ruling conflicts with certain cited cases of this court.

It will not be necessary to consider whether or not the cited cases ruled the question, for the reason said court did not rule that "occupational disease" included the aggravation of latent tuberculosis. On the contrary it ruled that there was substantial evidence tending to show that deceased continued in good health until the latter part of 1933 and thereafter became afflicted with silicosis, an "occupational disease," which caused the tuberculosis of which he died.

II. Relators also contend that the ruling of the Court of Appeals on the admissibility of the chemical analysis of the paint is in conflict with Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 763, 81 S. W. (2d) 323; State ex rel. Mfg. Co. v. Beck, 337 Mo. 839, 854, 85 S. W. (2d) 1026; Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 146, 31 S. W. (2d) 21; James v. Kansas City Gas Co., 325 Mo. 1054, 1071, 30 S. W. (2d) 118; State ex rel. Baldwin v. Shain, 125 S. W. (2d) 41, 46; Boll v. Condie-Bray Glass & Paint Co., 321 Mo. 92, 101, 11 S. W. (2d) 48.

In substance, we ruled in the Wolf and Beck cases that subsequent conditions of a plant were not admissible as tending to show conditions during the employment, unless there was evidence tending to show that said conditions were similar.

In the other cited cases no effort is made to show conflict. Relators argue the point on the merits.

As stated, in the latter part of 1933 the deceased noticed that he was not in his usual physical condition. However, he continued to perform his full duty until May 29, 1934. The chemical analysis was made during the time of his employment, and in February, 1934. The Court of Appeals ruled that the chemical analysis was admissible for the reason the dust from February to May 29th directly contributed to the death of decedent and for the further reason that said analysis tended to show that the effect of the dust on the employee was the same before the chemical analysis as after the chemical analysis.

III. At the trial relators objected to the admission of certain evidence as in violation of a stipulation of the parties. They contend that the refusal of the Court of Appeals to rule on the question is in conflict with Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 1007, 82 S. W. (2d) 909; Huegel v. Huegel, 329 Mo. 571, 575, 576, 46 S. W. (2d) 157; State ex rel. Fidelity & Deposit Co. of N. Y. v. Allen, 85 S. W. (2d) 455; State ex rel. Talbott v. Shain, 334 Mo. 617, 66 S. W. (2d) 826.

Relators direct attention to no conflict with the cited cases. They argue this point on the merits.

On the question the Court of Appeals ruled that the point first appeared in a reply brief, and for that reason "is too late for consideration," citing Orchard v. Missouri Lumber & Mining Co. (Mo.), 184 S. W. 1138, which sustains the ruling.

IV. Relators also contend that the opinion of the Court of Appeals in ruling that "occupational disease" under the compensation law is not restricted to diseases peculiar and incidental to the employment, conflicts with Wolf v. Mallinkrodt Chemical Works, 336 Mo. 746, 81 S. W. (2d) 323, and Downey v. Kansas City Gas Co., 338 Mo. 803, 92 S. W. (2d) 580.

The Wolf case was an action for damages under the common law and the statutes of Missouri. The answer was a general denial. The meaning of "occupational disease," under the compensation law, was in no way involved in said case. Even so, the opinion in said case stated that "occupational disease," under the compensation law, includes only diseases peculiar and incidental to the employment. The statement is not a ruling of this court on the question but were *obiter dictum*.

The Downey case also was an action for damages, but the question of the meaning of "occupational disease," under the compensation law, was for determination under the pleadings. In ruling the question in the Downey case we quoted the *obiter* from the Wolf case and thereby adopted said *obiter* as a rule of this court.

The opinion in the instant case ruled that "in the absence of any provision (in the compensation law) to the effect that an occupational disease under the act is a disease 'incident' or 'peculiar' to the work it is reasonable to say the Legislature intended that an occupational disease, within the meaning of the compensation law, is a disease caused by or directly resulting from working conditions." [Fitzgerald v. Fisher Body St. Louis Company et al., 130 S. W. (2d) 1. c. 977.] The ruling is in conflict with the Downey case and the writ should be granted, quashing only this part of the opinion of the Court of Appeals. It is so ordered. All concur.